# In the United States Court of Federal Claims

|  |  |
|---|---|
| MYLES MCCADNEY, | |
| *Plaintiff,* | |
| v. | No. 24-152 |
| | (Filed: February 25, 2025) |
| THE UNITED STATES, | |
| *Defendant.* | |

*Jason Ellis Perry*, Law Office of Jason Perry, LLC, Wellington, FL, for Plaintiff.

*Elinor Joung Kim*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**LERNER,** *Judge*.

Plaintiff Myles McCadney, a disabled veteran, was separated from the Army after the Integrated Disability Evaluation System ("IDES") determined a condition affecting his feet made him unfit for continued service. Plaintiff challenges the Army Board for Correction of Military Records' ("ABCMR" or "Board") finding that two other conditions affecting his feet were fitting for military service. Mr. McCadney asserts that the Army and Board made factual errors and ignored important evidence. He also alleges that the Army's evaluation violated the IDES process in systemic ways. Before this Court are the parties' Cross-Motions for Judgment on the Administrative Record. Def.'s Mot. for J. on the Admin. R. (hereinafter "Def.'s Mot."), ECF No. 12; Pl.'s Cross-Mot. for J. on the Admin. R. and Resp. (hereinafter "Pl.'s Mot."), ECF No. 15.

Military fitness determinations are reserved to the military branches, and thus this Court may not re-weigh the evidence. Yet on this record, key elements of the ABCMR's decision are unsupported by substantial evidence and are arbitrary and capricious. Further, while Plaintiff largely fails to establish systemic violations, certain aspects of how the Army administered the IDES process appear contrary to regulation and arbitrary on this record.

Accordingly, for the reasons below, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**. The Court **REMANDS** the case to the Board for proceedings consistent with this Opinion.

## I.    Factual Background

### A.    The IDES and Army Disability Retirement Process

This Opinion references the applicable regulations in force at the time of Plaintiff's separation from the Army in October 2018. A military service member may receive medical disability retirement pay and other benefits if the member "is unfit to perform the duties of the member's office, grade, rank, or rating because of a physical disability" and that disability is rated "at least 30 percent under the standard schedule . . . in use by the Department of Veterans Affairs at the time of the determination." 10 U.S.C. § 1201(a)-(b)(3)(B). *See also Thomassee v. United States*, 158 Fed. Cl. 233, 234 (2022). The IDES is a joint medical evaluation process used to determine whether a soldier should receive disability retirement. *Kaster v. United States*, 158 Fed. Cl. 86, 90 n.2 (2022). The process combines disability examinations performed by the Department of Defense ("DoD") and the Department of Veterans Affairs ("VA"). *Id.* The DoD then must "apply the VA's disability rating determinations for all conditions the [Army] determines to be unfitting." *Id. See generally* DoD Manual (hereinafter "DoDM") 1332.18, Vol. 2, Encl. 3 § 1 (Aug. 5, 2014).

Referral to the IDES often begins with updates to the service member's "PULHES" factors. Army Reg. 40-501 § 7–1 (June 14, 2017) (hereafter "Army Reg. 40-501"). The Army assigns numerical indicators to six letters corresponding to a body system: P – physical capacity; U – upper extremities; L – lower extremities; H – hearing and ears; E – eyes; and S – psychiatric. *Id.* § 7-3(b)-(c). A score of 3 or 4 indicates conditions requiring "significant" or "drastic[]" duty limitations, respectively. *Id.* § 7-3(d)(3)-(4). If a soldier is assigned a score of 3 or 4 in any of these six categories, a physician reviews whether the soldier appears to meet medical retention standards. Army Reg. 635-40 § 4–1(e) (Jan. 19, 2017) (hereafter "Army Reg. 635-40"). If a service member's condition "appears not to meet medical retention standards," they are referred to the IDES process. *Id.* § 4–1(e)(1).

#### 1.    VA Examination and Proposed Ratings

In the IDES, the service member receives "a single set of disability medical examinations" and "disability ratings provided by [the] VA for use by both departments." Army Reg. 635-40 § 4-1(d)(2)(a)-(b). *See also Lyon v. United States*, 168 Fed. Cl. 530, 530 n.4 (2023) ("[T]he VA performs the medical exam and decides the rating.") (alteration in original); DoDM 1332.18, Vol. 2 Encl. 2 § 1. The ratings include a disability percentage. *See* 38 C.F.R. § 4.1. They also include a numerical code corresponding to the VA Schedule for Rating Disabilities ("VASRD"), a list of diseases and injuries. *See id.* The VA and the Army use the VA exam and rating for different purposes. The Army considers them "in conjunction with the servicemembers' medical records . . . to make a determination of servicemembers' fitness for continued military service." *Fuentes v. United States*, 157 Fed. Cl. 433, 438 (2021) (citation omitted). The VA uses them to compensate for future injuries and loss of civilian employment. *See* 38 C.F.R. § 4.1.

#### 2.    The Army Uses VA Exams and Ratings in Fitness Determinations.

As the VA produces its ratings, the Army determines whether the soldier's claimed conditions are unfitting. "A Soldier will be considered unfit when the preponderance of evidence establishes that the Soldier, due to disability, is unable to reasonably perform the duties

of their office, grade, rank, or rating." Army Reg. 635-40 § 5–1. This is a functional determination that must consider "whether the Soldier can perform the common military tasks required for the Soldier's" duties and be deployed. Army Reg. 635-40 § 5-4 (c), (e), (g).

After referral to the IDES, an Army Medical Evaluation Board ("MEB") evaluates the soldier. Army Reg. 635-40 § 4–7(a). The MEB makes "a preliminary determination of the [soldier's] medical status and duty limitations." *Thomassee*, 158 Fed. Cl. at 235. The MEB prepares a Narrative Summary or "NARSUM." Army Reg. 635-40, § 4–12(a). The MEB uses the VA exams as evidence, along with other records. An MEB must review the VA exam, "may seek clarification or correction from the VA," and "will resolve any inconsistencies regarding diagnosis, onset, severity, and impact on duty." *Id.* § 4–12(c)-(d). The service member may appeal the MEB's findings and seek review by a physician. *Id.* § 4–13, 4–14.

If the MEB preliminarily determines that the soldier cannot perform their duties, it refers the case to a Physical Evaluation Board ("PEB"). Army Reg. 635-40 § 4–19. The PEB determines whether members are unfit. *Keltner v. United States*, 165 Fed. Cl. 484, 491 (2023). An informal PEB first assesses the MEB's results and the service member's case file to make initial findings. Army Reg. 635-40 § 4–22(a)(1).

If a soldier is either determined to be unfit or seeks to challenge a finding that they are fit, they may request a formal PEB. *Id.* § 4–23(a)-(c). The formal PEB is designed to satisfy a soldier's statutory right to a "full and fair hearing" before being separated for physical disability. *See* 10 U.S.C. § 1214; Army Reg. 635-40 § 4–23. The PEB must "consider all relevant evidence in assessing Service member fitness, including the circumstances of referral." Department of Defense Instruction ("DoDI") 1332.18, Encl. 3, App'x 2, § 3 (August 5, 2014).

The PEB must use the VA exams and ratings, but they are "not determinative" of fitness. *Ward v. United States*, 133 Fed. Cl. 418, 431 (2017) (internal quotations omitted). That said, the VA's exam is designed to assist the Army in determining a soldier's fitness and disability rating. *Culpepper v. United States*, No. 22-420, 2023 WL 124864, at *1 (Fed. Cl. Jan. 6, 2023) (hereinafter "*Culpepper I*"). Accordingly, the Army must consider a "plaintiff's disability rating as relevant evidence in determining whether [he] was unfit for duty," and may not dismiss those results. *Valles-Prieto v. United States*, 159 Fed. Cl. 611, 618 (2022). *See also* DoDM 1332.18, Vo1. 2, Encl. 3, § 2(e); DoDI 1332.18, Encl. 3, § 1(d)).

In examining fitness, the PEB must "take into account all medical conditions, whether individually or collectively, that render the member unfit." 10 U.S.C. § 1216a(b). Further, Army regulations provide that

> [a] Soldier may be determined unfit as a result of the overall effect of two or more impairments even though each of them, standing alone, would not cause the Soldier to be found unfit because of physical disability. Further, unfitness due to overall or combined effect may include one or more conditions determined to be unfitting in combination with an independently unfitting condition.

Army Reg. 635-40 § 5–4(g). The military must consult the VA exams to determine collective impact. DoDM 1332.18, Vol 2., Encl. 2 § 3(a)(12).

3.     Once a Soldier Is Deemed Unfit, the Army Applies the VA's Codes and Ratings to Any Unfitting Condition.

After the PEB determines a condition is unfitting, the IDES process requires it to accept and apply the percentage disability ratings proposed by the VA for that condition. The informal PEB (or formal, if requested) must "apply the ratings using the diagnostic code(s) provided by the [VA] to the Service member's unfitting conditions." *Id.*, Encl. 4, App'x 10 § 2(b). *See also* Army Reg. 635-40 § 4–22(c) ("Once the PEB receives the VA disability rating percentages, it will apply them to the conditions determined compensable by the PEB"). *See also Thomassee*, 158 Fed. Cl. at 235 ("The PEB must apply the percentage ratings set out in the [VASRD]" to the "medical defects or conditions 'which make [the] member unfit for continued military service.'"). If—after the PEB adopts and applies the VA's percentages—the soldier's rating is thirty percent or higher, the member may be entitled to medical retirement benefits. 10 U.S.C. § 1201.

**B.     Mr. McCadney's Service and Medical History**

Plaintiff entered active duty with the Army on June 13, 2007. AR 199. Under the section for "feet," his enlistment exam listed "Pes Planus" and "Hallux Valgus." *Id.*

Pes Planus, the medical term for flat foot, or flat feet in the plural, "is a condition in which there is no arch support in the sole of the foot." *Fetty v. Wilkie*, 786 F. App'x 243, 244 n.1 (Fed. Cir. 2019). Flat feet may be congenital, which is usually asymptomatic. 38 C.F.R. § 4.57. However, it may also become "acquired" from "[u]sing shoes with inadequate arch support, prolonged standing and walking, and repetitive high-impact activities." *Mazarji v. United States*, 164 Fed. Cl. 298, 301–02 (2023). Flat feet can cause "pain, stiffness, and injury both to one's feet and to other parts of the body as the impact of walking and running is passed through the joints without being properly absorbed by the feet." *Id.* Flat feet can be both asymptomatic and symptomatic. Symptomatic flat feet causes foot pain and tenderness on the foot's surface, spasms of the Achilles tendon (the ankle muscle), limited motion, pronation, and swelling on use of the foot. 38 C.F.R. §§ 4.57, 4.71a. Plaintiff's 2007 enlistment exam noted his flat feet were "moderate" and "asymptomatic." AR 199.

Hallux valgus, known as bunions, is a "deformity in which the great toe is angled away from the midline of the body towards other toes." *Newcombe v. McDonough*, 856 F. App'x 288, 289 n.2 (Fed. Cir. 2021) (quotation omitted). *See also Butler v. Shineski*, 603 F.3d 922, 924 n.2 (Fed. Cir. 2010). Plaintiff's record first shows treatment for his bunions in July 2009, after a weight fell on his left foot. AR 45. After an Army physician identified his left toe bunion, a podiatrist prescribed custom orthotics to treat it on October 26, 2009. AR 45, 47, 50.

Between August 5 and August 26, 2014, Mr. McCadney made multiple visits to physicians for ankle and joint pain. AR 52–64. Plaintiff specifically reported left ankle pain, which he said stemmed from a 2011 fall into a well. AR 58.

These medical visits also contain evidence of treatment for flat feet related to his ankle pain. An earlier report from an x-ray of Plaintiff's ankle found "[d]ecreased calcaneal pitch suggestive of [flat feet]," meaning Plaintiff's heel bone changed angles. AR 52. An August 5, 2014 record stated: Plaintiff "[h]as [a] physical therapy appointment today for ankle pain and [will] get consult for inserts for his shoes from physical therapy." AR 54. The same physician

found flat foot on both of Plaintiff's feet. AR 56. On August 6, 2014, a follow-up note said Plaintiff had been referred for a "pair of medium density orthotics for [flat feet]." AR 60. The "Provisional Diagnosis" was "[a]nkle joint pain." *Id.* On August 7, 2014, a provider prescribed a metatarsal arch support orthotic, "physical therapy education orthotics training" materials, and "treatment of the foot." AR 60. On August 26, 2014, a physician's tests noted flat foot while diagnosing Plaintiff's ankle issues. AR 59.

After a decade of distinguished service, Mr. McCadney accepted a commission as an Infantry Second Lieutenant and reported to the Infantry Basic Officer Leadership Course ("IBOLC" or "the Leadership Course") at Fort Benning, Georgia in Fall 2017. AR 371–72. During this course, on October 6, 2017, Plaintiff reported to the hospital for ankle pain after a ruck march. AR 65. A ruck march is a military exercise where soldiers briskly march with a heavy loaded pack.

Plaintiff again needed medical care at a hospital on October 11, 2017 for pain in his left foot and right ankle. *Id.* He explained that he had "developed gradually increasing pain in both lateral ankles and feet" during the Leadership Course training. *Id.* The provider, Dr. Robert Snoddy, found that "[Mr. McCadney] has [flat foot] [in] both feet." *Id.* Dr. Snoddy noted Plaintiff's "long-standing history of flat feet" and stated that he had "previously be[en] seen by orthopedics or podiatry and . . . has been given orthotics." *Id.* Records from this visit reported "pain in both lateral ankles," "ankle joint stiffness[,]" "[s]tiffness of the foot, foot pain occurring with exercise, and [that] the arch of [his] foot is lost." AR 67. Plaintiff reported he had been experiencing sharp pain for the previous five days that was "constant and more every [] time he takes a step." *Id.* The provider determined factors correlating with onset were "flat feet and training for IBOLC." *Id.*

On October 13, 2017, Plaintiff reported to a clinic with "bilateral ankle and foot pain." AR 69. He experienced "significant pain when stepping down on the left foot." *Id.* The clinician observed Mr. McCadney "has significant [flat feet]." *Id.* Later that day, Plaintiff was fitted for an orthotic boot to treat "left ankle/foot pain." AR 71. On October 20, 2017, Dr. Snoddy diagnosed Plaintiff with "Flat Foot [pes planus] (acquired), unspecified foot." AR 74. He wrote:

> Patient does have extreme flatfeet. I agree that it is unlikely he would do well as an infantry officer long-term. I will await a podiatry opinion to make sure there is no further treatment recommended that would alter his capabilities. After the podiatry referral, he would be a candidate for a permanent L2 profile that would limit road marching distance.

AR 74.

Additional testing showed issues with both his flat feet and his bunions. The results of a November 2, 2017 podiatry exam and MRI identified "severe bilateral [flat foot] with mid foot sag imaging" as well as "[m]oderate bilateral hallux valgus deformity/bunions." AR 76–77. On November 8, 2017, after receiving the referral for "severe [flat foot] and chronic bilateral ankle and foot pain," a radiologist concurred with the acquired flat foot diagnosis. AR 79. The radiologist recommended Mr. McCadney for "an Army occu[p]ation other than infantry." *Id.*

On November 3, Dr. Snoddy again affirmed his diagnosis of acquired flat feet, writing:

> [e]ven with orthotics, it is unlikely the soldier would be able to continue with extended road marching as required in infantry branch. The podiatrist, the patient, and I are all in agreement that a permanent profile to limit extended road marching would be warranted. This would result in a recommendation for a branch transfer. Permanent L2 profile is generated to limit road marching to 8 miles with no other restrictions."

AR 81.

Other than noting bunions on the November 2 podiatry exam, the record shows that Plaintiff's pain was due to his flat feet. AR 65–81. At no point in Plaintiff's medical evaluation did providers note plantar fasciitis.[1] *Id.* On January 26, 2018, a provider observed "[Plaintiff was] not able to perform as [a] Soldier due to pain" and was "unable to run without pain." AR 83.

Mr. McCadney's medical provider referred him to the IDES on January 29, 2018 for VA compensation and pension exams. AR 85. Plaintiff's feet issues were referred to the VA and an MEB as "Foot Pain with [flat foot] and [bunions]" and assigned a 3 under the PULHES factor for lower extremities (referred to as "L3"), indicating a need for "significant" duty limitations. *Id.* The IDES process occurred while Plaintiff was still serving in the Army.

### C.    Plaintiff's VA Examination and Proposed Ratings

On March 28, 2018, a VA medical provider conducted an in-person exam of Plaintiff's feet. AR 87, 105. The provider reviewed Plaintiff's medical record in the Armed Forces Health Longitudinal Technology Application ("AHLTA"). *Id.* The exam noted Mr. McCadney's diagnosis of "bilateral flat foot" from June 9, 2014, and bilateral symptomatic bunions, with a diagnosis for the left foot on September 11, 2014, and the right foot from November 2, 2017. *Id.* The exam also recorded a diagnosis of plantar fasciitis on both feet dating from February 27, 2018, which does not otherwise appear in the record. *Id.*

The exam showed multiple instances of foot pain and movement limitations including "sharp" pain in Plaintiff's feet during the exam. AR 107, 110. Under a section labeled flat foot, the VA observed "pain on use of feet," "pain on manipulation of feet," "extreme tenderness of plantar surfaces," "decreased longitudinal arch height," "marked deformity" and "marked pronation" of both feet. AR 107–108. The exam recorded that "the weight-bearing line fall[s] over or medial to the great toe." And the provider noted "incoordination," "pain on movement," "disturbance of locomotion," "interference with standing," and "lack of endurance" for both feet. AR 110–11. The exam observed that Plaintiff "can not [sic] run, ruck[,] or jump" and stated that the conditions impacted his "ability to perform any type of occupational task." AR 112. The VA also found "bilateral plantar fasciitis and bilateral painful [bunions]." AR 108.

---

[1] Plantar fasciitis is inflammation of a fibrous band of tissue on the sole of the foot that connects the heel bone to the base of the toes. Plantar Fasciitis, Johns Hopkins Medicine, https://my.clevelandclinic.org/health/diseases/flat-feet-pes-planus (last visited on Feb. 21, 2025).

On June 7, 2018, the VA issued its proposed ratings and VASRD codes. It found Mr. McCadney had service-connected "bilateral [flat foot] with plantar fasciitis and [bunions]," and assigned him a proposed combined fifty percent disability rating. AR 166, 168. The assigned VASRD code number was 5276, "Flatfoot, acquired." AR 166.

The rating was a combined one. The VA explained that since "symptoms of two or more conditions cannot be clearly separated, [it] assign[ed] a single evaluation under whichever set of diagnostic criteria allow[ed] [for] the better assessment of overall impaired functioning." AR 168. When "evaluating conditions, [the VA] do[es] not assign more than one evaluation based on the same symptoms." *Id.*

Here, the proposed rating assessed the conditions together because Mr. McCadney's symptoms overlapped and they "all affect[ed] lower extremity deformity and pain to the feet." *Id.* The VA also included a separate "MEB note." *Id.* The note stated that Plaintiff's bunions "would have warranted [ten] percent each absent the non-referred conditions of [flat feet] with plantar fasciitis" because Plaintiff demonstrated "painful motion." *Id.*

Plaintiff received additional diagnoses from the VA. AR 166. Specifically, he received a proposed seventy percent rating under VASRD codes 8045-9411 for post-traumatic stress disorder ("PTSD") and depression and traumatic brain injury ("TBI"). *Id.*

### D.  Plaintiff's Army Evaluation

#### 1.  MEB Assessment

After the VA completed its compensation and pension exams, the Army evaluation process proceeded based in part on the VA's results. An MEB convened in April 2018. AR 129. Army physician Jacqueline Schuler evaluated Mr. McCadney's condition and prepared the NARSUM. *Id.* Dr. Schuler considered Plaintiff's AHLTA records; a commander's statement; the results of Plaintiff's VA exams, including the physical exams; and his referral information. AR 129–30. Dr. Schuler did not complete a physical exam of Plaintiff. *See id* ("Physical findings . . . [Mr. McCadney] not examined on this visit.").

The MEB's NARSUM found Mr. McCadney's bunions to be unfitting. AR 133. It found that Plaintiff's "Foot Pain due to [bunions]" has "limited his function and ability to perform his required military . . . duties." AR 134. It based the diagnosis on the November 2, 2017 x-rays showing "severe [flat foot], [and] moderate [bunions]." AR 134. The MEB observed that Plaintiff had "no additional follow up evaluation for Foot Pain" from 2009 to October 2017. *Id.*

The MEB wrote that while the "current status" of Plaintiff's flat feet was "severe," his bunions remained moderate. *Id.* It also acknowledged his plantar fasciitis diagnosis by the VA. *Id.* The MEB reported Plaintiff had "constant moderate Left Foot Pain and mild Right Foot Pain." *Id.*

The MEB determined "[t]he rigors of soldiering would most likely worsen [Mr. McCadney's] condition." *Id.* The MEB found Plaintiff's bunions had a significant impact on duty performance and recommended limitations. *Id.* It stated Mr. McCadney should wear "extra wide boots and orthotics," should not climb in and out of tanks, and was prohibited from carrying more than forty pounds, ruck marching, and running in formation. *Id.* The MEB

decided Plaintiff's inability to perform these required duties failed retention standards. *Id.* The MEB proposed Plaintiff's bunions be rated as an L3 under the PULHES factors. AR 133.

In contrast, while the MEB relied on much of the same information, it found Plaintiff's flat feet met retention standards. AR 135. Despite describing his flat feet as "severe" when discussing his bunions, it characterized his flat feet as "asymptomatic" in this analysis. *Compare* AR 134 *with* AR 135. The MEB stated that Plaintiff "denied any symptoms of Foot Pain or any musculoskeletal complaints" in July 2016 and July 2017—something that it also observed in reference to his bunions. *Id.*

The MEB noted that Plaintiff was "diagnosed with [flat feet] by Podiatry in 2017," seemingly ignoring the June 2014 diagnosis. AR 135. It observed the same permanent profile limitations including "running, rucking[,] and jumping . . . as well as consideration for a . . . transfer to a less physically demanding" role. *Id.* Other than references to his medical history, the MEB did not discuss the contents of the VA exam. AR 135. Nor did it discuss any of the details of Plaintiff's October and November 2017 visits or explain why his flat feet were asymptomatic. *Id.*

As to Mr. McCadney's plantar fasciitis diagnosis, the MEB observed that he had "no evaluation or treatment for symptoms associated with the condition and was initially diagnosed with this condition on his VA exam." AR 135. It also stated that "the symptoms [Plaintiff] reported to Podiatry [in 2017] were not consistent with plantar fasciitis and he was asymptomatic on [the VA] exam." *Id.* The MEB found that there was no evidence that either condition "has interfered with the performance of his duties." *Id.* The MEB recommended an L2 profile, indicating the need for some activity limitations. AR 136.

On April 18, 2018, Mr. McCadney appealed the MEB's findings, arguing that his flat feet failed retention standards. AR 15. The reviewing physician's decision stated that flat feet are "generally asymptomatic and treatment with orthotics is focused on preventing the development of these other conditions, not for any symptoms of [flat feet] itself." *Id.* The doctor stated— without referencing any of Plaintiff's specific symptoms—that his "findings support a determination that this condition in fact meets retention standards." *Id.* The doctor affirmed the MEB's findings on April 19, 2018. AR 12, 15, 162.

## 2.    PEB Determination

Because the MEB found Plaintiff unfitting due to his bunions, an informal PEB convened to evaluate Plaintiff on June 11, 2018. AR 15. The PEB adopted the MEB's findings. It noted that Mr. McCadney "reports onset of [his bunions] in October 2017 from a ruck march," and it stated that "[t]his condition is medically unacceptable and prevents worldwide deployment in a field or austere environment." AR 161. Although the VASRD code was 5276 for "flatfoot" and the rating was fifty percent, the PEB referenced the VA's note that bunions alone would each warrant a ten percent rating. *Id.* The PEB awarded Plaintiff a total twenty percent rating for his feet, ten percent less than the thirty percent threshold that would entitle him to medical disability retirement. *Id.* It did not award him a rating for his flat feet since the MEB found that condition was not unfitting. *Id.*

Mr. McCadney requested a formal PEB. AR 12. At a hearing in July 2018, Plaintiff stated that he had received custom orthotics and physical therapy for his flat feet. AR 16. The

PEB returned the case to the MEB to clarify these statements and comments Plaintiff made to a podiatrist about failing flat feet treatment, including "insoles, injections and profiling," on July 2, 2018. AR 162. The Administrative Record does not contain details of this podiatry visit.

The MEB responded to the PEB and highlighted purported inconsistencies in Plaintiff's statements. AR 162. The MEB asserted that "[t]he only treatment documented in [his] . . . medical record was a prescription for custom orthotics," which he received in 2009—seemingly referring to his 2009 bunions treatment but ignoring his 2014 flat feet orthotics. AR 162. It also claimed that while Plaintiff "received physical therapy for his bilateral ankle pain in 2014" and experienced ankle pain in 2017, "[t]he medical record does not reflect [he] received physical therapy for any type of foot pain." AR 162.

On October 10, 2018, the formal PEB concluded that there was "insufficient evidence to reverse [the MEB's] findings." AR 162. The PEB also summarily stated it considered the "combined, overall" effect of thirty-five other conditions, but with no written analysis. AR 161. The next day, Plaintiff declined to challenge the PEB findings. AR 12. And on October 30, 2018, Plaintiff was honorably discharged. AR 19.

### E.    ABCMR Petition

On April 13, 2021, Plaintiff petitioned the ABCMR to correct his record. AR 24. Plaintiff requested that the Army, consistent with the VA's proposed rating, find him unfit for flat feet and plantar fasciitis and increase his disability rating to fifty percent. AR 32–33. Plaintiff argued that 1) the Army incorrectly concluded that those conditions met medical retention standards; 2) the PEB failed to consider the overall effect of his overlapping disabilities; and 3) the PEB failed to follow the VASRD code 5276 assessed for acquired flatfoot. AR 33–36. Plaintiff did not raise any issues related to his VA mental health diagnoses. AR 26–36.

### F.    ABCMR Decision

On April 19, 2022, the ABCMR denied Mr. McCadney's petition. AR 1. The first eight pages of the Board's decision detailed the material submitted by Mr. McCadney's counsel, summarized the MEB and PEB proceedings, and referenced the regulations governing the IDES process and fitness determinations. AR 5–13. Most of the Board's analysis consists of an opinion from the Army Review Boards Agency ("ARBA") Medical Advisor. AR 13–19. The Medical Advisor stated that it reviewed Plaintiff's petition, his military electronic records, his VA record, and other evidence in Plaintiff's file. AR 13. The Medical Advisor also cited a "three-page narrative summary addendum," which contained the MEB's responses to the PEB's inquiries. AR 16. This addendum does not appear in the Administrative Record.

The Medical Advisor agreed with the Army's decision. First, it stated that the MEB appeal physician "correctly point[ed] out that . . . [flat feet] per se is not typically symptomatic." AR 15. But the Medical Advisor did not address whether, in Mr. McCadney's particular case, his flat feet were symptomatic. *Id.* Nor did it mention specific findings in the medical records, including the VA exam's results. AR 13–18.

Second, the Medical Advisor relied on the alleged inconsistencies between Plaintiff's July 2, 2018 statements to the podiatrist and his medical record. AR 16. The Medical Advisor's

analysis discussed information not included in the PEB's final decision.  The Advisor stated that "[p]odiatry notes by Dr. DG" observed that Plaintiff "reported a history of trying medication, shoe gear, insoles, imaging, injections, and profiling in the past without relief."  *Id.*  The Administrative Record does not include these podiatry notes.  The Medical Advisor also emphasized that Plaintiff had been treated for ankle pain but not foot pain.  *Id.*

The Medical Advisor opined that Plaintiff's claims about previous treatments "are unsupported by a review of the AHLTA records."  AR 17.  But the Advisor ignored the request for orthotics in 2014 for flat foot, the October and November 2017 medical records, and the results of the VA exam.  AR 16.  And the Medical Advisor's only reference to Plaintiff's functional limitations was to note that he was "able to bike and use the elliptical."  AR 17.  The Advisor speculated that there was "no medical explanation for" the purported inconsistencies "other than possible personal issues that may be motivating [Plaintiff's] behavior."  *Id.*

The Board adopted the Advisor's findings in a single paragraph.  AR 19.  The Board stated that it "review[ed] the application, all supporting documents, and the evidence found within the military record."  *Id.*  The Board denied Plaintiff's application.  *Id.*

### G.    Court of Federal Claims Complaint

Plaintiff filed his Complaint in this Court on January 31, 2024.  Compl.  Plaintiff's Complaint alleges the Board's fitness determination was erroneous, and the Army committed system-wide legal violations in administering the IDES.  Plaintiff claims:

1) The PEB failed to make its own independent determinations and inappropriately deferred to erroneous or incomplete MEB findings;
2) The MEB, PEB, and ABCMR failed to credit the VA's exam;
3) The MEB and PEB erred by failing to consider the collective impact of disability on functional performance;
4) The PEB erred in failing to award and apply the same disability ratings as the VA;
5) The Board failed to find the Army incorrectly applied its profiling standards; and
6) These errors denied Plaintiff a full and fair hearing.

Compl. at 20–21.

Plaintiff also styled his Complaint as a "Class Complaint."  Compl. at 1.  Plaintiff seeks to represent a class of all persons who served on active duty in the Army and were "separated or retired . . . within the past six years due to disabilities that were inappropriately rated due to one or more of the errors of the MEB or PEB . . . identified in this Complaint."  Compl. at 20.

On August 5, 2024, the Government moved for Judgment on the Administrative Record, also styling its motion as an "Opposition to Class Certification."  Def.'s Mot.  Plaintiff responded and filed his cross-motion on October 4, 2024.  Pl.'s Mot.  The Government replied on November 18, 2024.  Def.'s Resp. & Reply, ECF No. 18.  Plaintiff replied on December 18, 2024.  Pl.'s Reply, ECF No. 20.  The Court heard oral argument on January 28, 2025, and requested supplemental briefing which the parties submitted on February 13, 2025.  *See* ECF No. 21; Def.'s Suppl. Br., ECF No. 22; Pl.'s Suppl. Br., ECF No. 23.  The parties' motions are now fully briefed.

## II.    Jurisdiction

The Court of Federal Claims has jurisdiction under the Tucker Act to hear certain monetary claims against the United States.  28 U.S.C. § 1491(a)(1).  To establish jurisdiction, a plaintiff must invoke an independent money-mandating source of law from which the claim arises.  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).  Here, Plaintiff establishes jurisdiction by alleging a violation of 10 U.S.C. § 1201, a money-mandating source of law.  *Jones v. United States*, 30 F.4th 1094, 1100 (Fed. Cir. 2022).

## III.    Standard of Review

Judicial review of military discharge decisions is limited because the determination of "who is fit or unfit to serve in the armed services is not a judicial province."  *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983).  Thus, the Court's review of the ABCMR's decision is limited to whether the challenged decision is "arbitrary, capricious, unsupported by substantial evidence, or contrary to law."  *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citation omitted).

The Board's decision is arbitrary and capricious if it "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [Board], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Adams v. United States*, 117 Fed. Cl. 628, 653 (2014) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).  "The agency must articulate a rational connection between the facts found and the choice made."  *Gregory v. United States*, 151 Fed. Cl. 209, 237 (2020) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974)) (internal quotation marks omitted).  "When . . . the agency has not fully explained its decision . . . the Court generally remands" for a fuller explanation.  *Ford v. United States*, 172 Fed. Cl. 300, 303 (2024).

 "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Strand v. United States*, 951 F.3d 1347, 1351 (Fed. Cir. 2020) (internal quotations and citation omitted).  "[A]ll of the competent evidence must be considered . . . whether or not it supports the challenged conclusion."  *Valles-Prieto*, 159 Fed. Cl. at 617 (quoting *Heisig*, 719 F.2d at 1157).  "[The Board] . . . fail[s] to consider the entire record [when] it cherry-pick[s] which evidence to consider."  *Id.* at 618.  The Board must offer more than a "naked conclusion and mere recitation" that it has analyzed all the evidence in writing.  *Robbins v. United States*, 29 Fed. Cl. 717, 728 (1993) (quoting *Beckham v. United States*, 183 Ct. Cl. 628, 636 (1968)).  If "the Board lacked the benefit of . . . critical information, its decision is not supported by substantial evidence."  *Frey v. United States*, 112 Fed. Cl. 337, 348 (2013).  While the Board is "not required to discuss each of [a plaintiff's] medical records," it must "review the complete case record" and "provide a reason for . . . [its] failure to consider certain" relevant evidence.  *Hatmaker v. United States*, 127 Fed. Cl. 217, 235–36 (2016) (citations omitted).  If the Board "[does] not disclose[] its reasons for . . . ignoring" or "disregard[ing]" certain record evidence" and the Court is "unable to discern why," remand is appropriate.  *Id.* at 238.  *See also Fuentes*, 157 Fed. Cl. at 463 (finding decision arbitrary and capricious when it relied on an advisory opinion that "evaluated only certain of [a] plaintiff's medical records during his service").

The Board must "sufficiently address whether [a plaintiff] was able to perform the common duties" of his "office, grade, rank, or rating." *Kelly v. United States*, 69 F.4th 887, 895–96 (Fed. Cir. 2023). "[T]he relevant time for a determination of whether [a] [p]laintiff is entitled to military disability benefits is when [he] was separated from the service." *Ward*, 133 Fed. Cl. at 418. Thus, the Board acts arbitrarily when "it fail[s] to address whether [a] plaintiff's medical condition previously found to be fitting for service had become unfitting, and to what degree, by the date of [the] plaintiff's discharge." *Gregory*, 151 Fed. Cl. at 238.

## IV.    Discussion

The Court is unable to determine that, on this record, the ABCMR's assessment of Plaintiff's fitness is supported by substantial evidence, as it appears the Army ignored or contradicted important evidence in the record. Given the inadequacies in the Board's decision and the Army's processes, remand is appropriate. Additionally, while Plaintiff does not establish system-wide violations of the IDES process, aspects of its administration in Plaintiff's case are unexplained or erroneous.

### A.    The Board's Fitness Determination Is Not Supported by Substantial Evidence.

#### 1.    <u>The Army Does Not Explain Why It Did Not Consider the VA's Exam.</u>

A VA "disability rating [is] relevant evidence in determining whether plaintiff was unfit for duty." *Valles-Prieto*, 159 Fed. Cl. at 618 (citing *Heisig*, 719 F.2d at 1157). The Board must thoroughly consider and weigh the VA exam results against probative contrary evidence. *Bee v. United States*, No. 21-1970, 2024 WL 3912596, at *16–17 (Fed. Cl. Aug. 23, 2024). A correction board may give less weight to VA materials if this decision is rational and has an evidentiary basis, but it may not ignore them. *Stine v. United States*, 92 Fed. Cl. 776, 796 (2010), *aff'd*, 417 F. App'x 979 (Fed. Cir. 2011).

"[D]isability ratings based on an exam conducted immediately before discharge, as is the case here, are not to be easily outweighed or discounted by any of the service branches." *Bee*, 2024 WL 3912596, at *15. This is because fitness for duty must be assessed at the time of separation. *Ward*, 133 Fed. Cl. at 431. So while a board may discount a VA exam, it must rely on countervailing "objective evidence," including medical records and witness testimony, and non-contemporaneous exams may be less probative. *Mazarji*, 164 Fed. Cl. at 310. Still, "a mere mention" of the VA ratings "does not remotely cut the mustard" because claiming to have examined evidence "without an analysis . . . in writing" is inadequate. *Keltner*, 165 Fed. Cl. at 515 (quoting *Beckham*, 183 Ct. Cl. at 637).

The VA conducted Mr. McCadney's exams on March 27, 2018. They were nearly contemporaneous with the MEB's April 2018 assessment and prior to his separation. As such, they are relevant "contemporaneous objective medical evidence tending to show" functional limitations. *Mazarji*, 164 Fed. Cl. at 308. But here, the MEB, PEB, and ABCMR decisions failed to show that the VA exams were thoroughly considered and weighed.

Defendant claims the MEB and PEB considered Mr. McCadney's VA exam record in assessing his fitness for flat feet and plantar fasciitis, citing to the Board's summary of those bodies' decisions. Def.'s Mot. at 20 (citing AR 15–18). But the MEB's assessment only

mentioned the VA's exam to note it was the first appearance of his plantar fasciitis diagnosis. AR 135.

The Army must determine "whether [a plaintiff's] medical condition previously found to be fitting for service had become unfitting . . . by the date of plaintiff's discharge." *Gregory*, 151 Fed. Cl. at 238. So it is unclear why a condition that first appeared on the VA exam of record in March 2018—prior to his October 2018 separation—would be disregarded.

There is also no indication the MEB considered the VA's findings on functional limitations. AR 134–35. This omission is particularly glaring because other sections of the NARSUM extensively quoted the VA exam—including "Range of Motion" ("ROM") results and measures of "decreased motion and pain"—for other claimed extremity issues. *See, e.g.*, AR 136–140. Further, Army regulations require the MEB to clarify inconsistencies regarding diagnosis with the VA. Army Reg. 635-40, § 4–12(d). Given that the MEB came to contrary conclusions on largely the same data of overlapping symptoms, its failure to discuss the VA's findings is an error.

It is unclear that the PEB weighed the exam's findings about pain, motion limitations, and deformities that could impact Plaintiff's ability to "perform the common military tasks required" of his rank. Army Reg. 635-40 § 5–4(c). The PEB made at best "attenuated and tangential references" to the VA exam. *Mazarji*, 164 Fed. Cl. at 309. It cited the VA ratings but did not address the Administration's exam's results as to Plaintiff's functional limitations. AR 162. And the PEB emphasized purported inconsistencies in Plaintiff's medical records from 2009 and 2014 and his lack of foot treatment prior to 2017. *Id.*

While the Army may discount the VA exam by relying on records more proximate in time, the PEB's focus on years-old records is inappropriate. Plaintiff's VA exams happened "immediately before discharge" and should not have been summarily discounted. *Bee*, 2024 WL 3912596, at *15.

The Board's decision replicated this error. Defendant claims the Board "considered Mr. McCadney's VA exam record" in assessing his fitness and cites to the Medical Advisor's summary of the MEB and PEB decisions. Def.'s Mot. at 20 (citing AR 15–18). But nothing in the page range cited addresses the exam's details on functional limitations or impairments. AR 15–18. The Board referred only obliquely to the VA findings in summarizing Plaintiff's contentions. AR 4–5. And the Board emphasized a purported inconsistency between Plaintiff's summary of his medical history and his 2009 and 2014 medical records. AR 16–18.

On this record, Plaintiff's VA exams "represent[] the most contemporaneous record of [his] condition[s] and fitness to perform his duties *at the time of his release*." *Prewitt v. United States*, No. 22-1673, 2025 WL 452357, at *10 (Fed. Cl. Feb. 10, 2025). The Court does not purport to decide whether the Board should have accepted the VA exam's results. *Hatmaker v. United States*, 117 Fed. Cl. 560, 574 (2014). But "without an explanation of why the Board" did not appropriately weigh the relevant evidence of the VA exam's results for flat feet and plantar fasciitis, the Court "is unable to determine whether substantial evidence supported the Board's decision." *Id.*

Plaintiff asks for the IDES exam to be treated as the "presumptively correct source of medical findings." Pl.'s Reply at 5. This would be inappropriate. *See Myles*, 2022 WL

2296767, at \*8 (quoting *Stine*, 92 Fed. Cl. at 795) (explaining military boards are "not bound by" VA exams). However, as the Board acknowledged, VA exams are "the basis for both . . . military and VA disability processing." AR 14. The Army must weigh the exams' content as to the paramount question: whether Plaintiff was fit to do his job at the time of his discharge. *Bee*, 2024 WL 3912596, at \*16–17. Because the Board did not do so, its decision is unsupported by substantial evidence.

2.    The Board's Fitness Determination Finding Is Otherwise Unsupported by Substantial Evidence and Is Arbitrary and Capricious.

The failure to analyze the VA exam results is compounded by the Board's other unexplained findings that are contrary to the record evidence. Defendant contends that the Army discounted the VA exams and instead "relied appropriately on the military medical records." *Id.* But the Army failed to address key records, misstated facts, and otherwise made decisions that "r[an] counter to the evidence before [it]." *Adams*, 117 Fed. Cl. at 653.

a.    The Board's Failure To Consider Relevant October and November 2017 Medical Records Is Unexplained.

The Board "d[id] not disclose[] its reasons for . . . ignoring" the clear evidence of functional limitations caused by flat feet beginning October 2017 and instead focused on Mr. McCadney's remote, pre-2017 medical history. *Hatmaker*, 127 Fed. Cl. at 235–36. The MEB and PEB treated the fact that Plaintiff did not manifest symptoms of foot pain in the years *before* October 2017 as evidence that in 2018 his flat feet and plantar fasciitis were fitting. *See, e.g.*, AR 134 (noting Plaintiff had "no additional follow up evaluation for Foot Pain for 9 years"), 135 (same), 17 (noting Plaintiff's treatment in 2009 and 2014). The Board adopted this finding, relying on the MEB's and PEB's use of pre-2017 records to find Plaintiff's flat feet were "asymptomatic" before October 2017. AR 15.

But the relevant time for the fitness assessment is when Plaintiff was "found unfit for duty and separated from the service." *Barnick*, 591 F.3d at 1381. Thus, even if Mr. McCadney's conditions were not debilitating from 2009 to 2017, the required analysis was whether in 2018 his condition made him unfit. This also makes the Army's failure to discuss the VA exam, which occurred after his referral to the IDES but before separation, problematic. *See, e.g.*, *Meidl v. United States*, 108 Fed. Cl. 570, 577–78 (2013) ("By failing to consider whether Plaintiff's [conditions] became unfitting after the MEB and PEB evaluations but before his separation from the Army, the ABCMR acted arbitrarily and capriciously.").

The Army's focus on pre-2017 evidence is also puzzling because Plaintiff's treatment record beginning in October 2017 is teeming with references to functional limitations due to foot pain and flat feet that the Army failed to discuss. The MEB acknowledged that plaintiff "[w]as diagnosed with [flat feet] by Podiatry in 2017." AR 135. But it left out the fact that doctors diagnosed him with "acquired" flat feet that was "severe" and "extreme." AR 74, 79. The MEB acknowledged Plaintiff's "severe [flat feet]" only in its section analyzing bunions. AR 134. Its description of his flat feet a page later as "asymptomatic" is thus inconsistent with the record. AR 135.

The PEB similarly erred. It referred to evidence from October 2017 showing ankle pain after Plaintiff jumped into a ditch as proof he did *not* have flat feet. AR 162. But it did not

14

discuss medical records from the same visits that showed extensive foot pain and recommended duty limitations. *Id.* The IDES regulations state that "relevant evidence in assessing Service member fitness" includes "the circumstances of referral." DoDI 1332.18, Encl. 3, App'x 2, § 3. The Board appears to have ignored this critical evidence.

While the Board was not required to discuss each of Plaintiff's medical records, it did need to "provide a reason for . . . [its] failure to consider certain" relevant evidence. *Hatmaker*, 127 Fed. Cl. at 235–36. Other than to summarize Plaintiff's evidence at the start of its decision, the Board makes no mention of the October and November 2017 medical records. By focusing on his pre-2017 records, the Board arbitrarily "evaluated only certain of plaintiff's medical records during his service." *Fuentes*, 157 Fed. Cl. at 463. Because the Board failed to assess whether Plaintiff's flat feet "previously found to be fitting for service . . . had become unfitting" by his discharge in 2018, it acted arbitrarily. *Gregory*, 151 Fed. Cl. at 238. If the Board chose to discount Plaintiff's October and November 2017 records, the Court is "unable to discern why." *Hatmaker*, 127 Fed. Cl. at 237. Instead, the Board "cherry-pick[ed] which evidence to consider." *Valles-Prieto*, 159 Fed. Cl. at 618.

The same issue infects the Medical Advisor's finding that Plaintiff's flat feet were "asymptomatic." AR 15, 135. Both the Board and the MEB merely stated that congenital flat feet are not usually symptomatic. *See, e.g.*, AR 15. But the VASRD, which the military must use as a guide, specifically instructs that "[i]t is essential to make an initial distinction between bilateral flat foot as a congenital or as an acquired condition." 38 C.F.R. 4.57. The Board did not address whether Plaintiff's flat feet had become symptomatic by October 2017 or by his separation. In failing to do so, it "did not discuss relevant evidence that may contradict the conclusions of the [MEB] and [PEB]." *Henrikson v. United States*, 162 Fed. Cl. 594, 608 (2022). This failure is grounds for remand.

                              b.   <u>By Relying on Perceived Inconsistencies Regarding Plaintiff's</u>
                                   <u>Medical History, the Board Misstated the Record and Relied on</u>
                                   <u>Documents Unavailable for the Court To Review.</u>

The Board's emphasis on apparent inconsistencies in Plaintiff's pre-2017 medical history is also unexplained and irrational. The MEB, PEB, and Board all stated that the record did not reflect treatment for flat feet, only bunions. *See, e.g.*, AR 16, 162. In fact, August 5 and 6, 2014 medical records document Plaintiff's orthotic prescription for flat feet and other foot care prescriptions. AR 60. More importantly, as discussed above, even if Plaintiff's testimony was inconsistent as to his treatment between 2007 and 2017, the Board does not explain how discrepancies years before the time at issue were more relevant than medical evidence from October and November 2017 and the VA exam's findings just prior to his discharge.

In addition, the Board also discounted Plaintiff's testimony based on seeming speculation about his mental health, suggesting that there was no "medical explanation for these reported inconsistencies other than possible personal issues that may be motivating Mr. McCadney's behavior." AR 17. "Relianc[e] upon speculation to support [a] conclusion" in a fitness determination is improper. *Mazarji*, 164 Fed. Cl. at 311. *Cf.* Army Reg. 635-40 § 5-6(a) ("Findings will be made . . . on the basis of objective evidence in the record as distinguished from personal opinion, speculation, or conjecture.").

Further, in focusing on these alleged inconsistencies, the Medical Advisor quoted from a "three-page narrative summary addendum written [by the MEB] to answer the PEB's questions," including statements made to a "Dr. DG," "Podiatry," and the PEB. AR 16. The quotes from this document form a significant section of the Board's analysis. *Id.* But that document does not appear anywhere in the Administrative Record. Without these records, the Court cannot determine whether the Board's decision is supported by substantial evidence or is arbitrary and capricious.

c.   The Board's Other Errors

Remand is appropriate when a military board "failed to sufficiently address whether [the plaintiff] was able to perform the common duties of" his rank. *Kelly*, 69 F.4th at 895; *see also* Army Reg. 635-40 § 5–4(c). Here, the Board's analysis "[did] not necessarily equate to a finding that he was fit to perform work that [the] member . . . would . . . reasonably be expected to perform." *Kelly,* 69 F.4th at 895. Thus, remand is necessary for the Board to "reconsider . . . [evidence] and further explain its determination with respect to [Mr. McCadney's] common military tasks." *Id.*

Neither the Board nor the MEB and PEB made findings about "the duties that [Plaintiff] performed" when analyzing his flat feet. *Bee*, 2024 WL 3912596, at *11 (alteration in original). The October and November 2017 medical reports reflect that Plaintiff could not proceed as an infantry officer. But rather than examining these records or the VA exam, the Board noted that Plaintiff was "able to bike and use the elliptical." AR 17. But the relevance of that observation is highly tangential. The MEB listed "elliptical" as one of the "low impact activities" that Plaintiff should be *restricted* to due to his bunions. AR 134. "The question of which duties are the proper focus of the fitness inquiry"—in this case, Plaintiff's ability to serve as an infantry officer—is "a critical and potentially outcome-determinative one." *Henrikson*, 162 Fed. Cl. at 607–08. The Board has not provided enough evidence that it conducted this analysis.

The Board's focus on ankle pain is similarly unexplained. The ABCMR discredited the fact that Plaintiff was treated for "ankle pain" in 2014 but not "foot pain." AR 17 (quoting AR 162). *See also* Def.'s Mot. at 18. But there is no "rational connection" between the two. *Gregory*, 151 Fed. Cl. at 237. "Flat feet can cause numerous issues including pain[] [and] stiffness . . . to other parts of the body," including the ankle. *Mazarji*, 164 Fed. Cl. at 302. *Cf.* 38 C.F.R. 4.71a (explaining acquired flat feet involves "inward bowing" or "inward displacement and severe spasm" of the Achilles tendon). Here, the record reflects a relationship between Plaintiff's foot pain and ankle pain; for example, Plaintiff's August 5, 6, and 7, 2014 medical records that culminated in orthotics for flat feet linked his prescription to "ankle joint pain." AR 60. And the October and November 2017 treatment notes show providers diagnosed his ankle pain as directly related to his flat feet. *See, e.g.*, AR 65, 67, 72, 74. The Board's decision to discredit this evidence is unexplained and irrational.

Finally, the military relied on much the same evidence to find Plaintiff fitting for flat feet and plantar fasciitis but unfitting for bunions. The MEB noted the same proposed activity limitations. AR 134–35. The prognoses for improvement were near-identical. *Compare* AR 134 (bunions) *with* AR 74, 79, 81 (flat feet). And the conditions were referred to the IDES together with the same symptoms. AR 85. The MEB said for both bunions and flat feet Plaintiff had denied foot pain before IBOLC commissioning. AR 134–35. And although the October and

November 2017 records and VA exam suggested significant overlap between the functional impact of the symptoms, the Army assigned an L3 profile for bunions and an L2 for flat feet. The Board's decision did not address these inconsistencies.  Because the Board "fails to support its decision with a reasoned explanation of an important issue, a remand is appropriate." *Henrikson*, 162 Fed. Cl. at 609 (quoting *Rominger v. United States*, 72 Fed. Cl. 268, 273 (2006) (internal quotation marks omitted)).

Plaintiff argues that the assignment of separate PULHES ratings for different parts of his feet rather than a single rating systematically violates Army regulations.  Pl.'s Mot. at 16.  The Army profiling regulations are silent on whether this kind of sub-profiling of systems is inappropriate.  Army Reg. 40-501 § 7–3.  On this record, it is unclear a systemic violation occurred.  But because the Army's decision to rate the profiles differently is unexplained, the Board should also explain this practice on remand.

3.    Plaintiff Does Not Establish a Systemic "Collective Impact" Issue, but the
Army Did Not Consider Collective Impact in Plaintiff's Case.

Plaintiff argues that the Army imposes too high a standard for finding a condition unfitting under 10 U.S.C. § 1216a(b).  Compl. at 9.  He also claims that the Board made "no analysis . . . as to whether the combined effect was actually considered or whether the overlapping foot conditions should have been unfitting."  Pl.'s Mot. at 6.  The Court disagrees on the former but agrees on the latter.

In evaluating fitness and applying ratings, the Army must "take into account all medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating."  10 U.S.C. § 1216a(b).  Under this analysis, "a Service member may be deemed unfit due to two or more combined conditions, even if each condition, standing alone, would be insufficient to render the Service member unfit for duty."  *Fuentes*, 157 Fed. Cl. at 451.  "A condition must be considered as part of a Service member's disability rating if that condition 'contributes' to a finding of unfitness."  *Id.* at 451.  A condition need not be the "primary cause of a soldier's unfitness."  *Meidl*, 108 Fed. Cl. at 577.

Here, there is no evidence the Army systematically applied a heightened standard, as Plaintiff claims.  Plaintiff relies on a court's finding that the Army, in a different case, wrongly assumed a condition must contribute "significantly" to unfitness to be rated.  *Sissel v. Wormuth*, 77 F.4th 941, 948 (D.C. Cir. 2023).  But Plaintiff points to nothing in this record suggesting the Army applied that standard to his case other than to observe that the *Sissel* proceedings occurred a year after his own.  AR 13.  And the record shows the PEB accurately stated its obligation to "include combined, overall effect."  AR 161.  Without more, Plaintiff does not establish a system-wide violation.

Despite reciting the correct standard, the Army did not comply with it.  *Cf. Fuentes*, 157 Fed. Cl. at 459.  The MEB and PEB relied on records of foot pain and ankle pain, but only considered Plaintiff's bunions—instead of the possibility that his flat feet and plantar fasciitis contributed to his foot pain, and thus his unfitness.  In *Fuentes*, the Court reversed because there was little written analysis showing that multiple conditions were assessed "at the same time."  *Id.* at 459 (remanding when Plaintiff claimed "[t]here's not a sentence or a paragraph that considers

17

his spinal injury and knee injury at the same time, [or] his knee injury and jaw injury at the same time") (alteration in original). Here, the record is similar. The Board addressed whether Plaintiff's "foot conditions, in isolation, were unfitting." *Meidl*, 108 Fed. Cl. at 577. But it did not explain whether Plaintiff's flat feet—which also required orthotics and produced pain—contributed to unfitness along with his bunions.

Further, the Board failed to consider collective impact because it ignored—without explanation—evidence that indicated an overlap of symptoms, including the October and November 2017 records and the VA exam. *Cf. Hatmaker*, 127 Fed. Cl. at 235–36 (remanding to military board for failure to consider medical opinion that plaintiff was "disabled . . . as a result of multiple medical problems" and court could "not discern the reason for the omission."). This also violated IDES regulations that instruct the VA exam should be used to determine collective impact. DoDM 1332.18, Vol 2., Encl. 2 § 3(a)(12). The Board must provide a thorough review and written analysis of potentially overlapping conditions and may not summarily disregard combined impact. *Fuentes*, 157 Fed. Cl. at 460. A summary statement that the PEB assessed the combined impact—in a laundry list of thirty-five other conditions—is a "naked conclusion and mere recitation" of the legal standard. *Robbins*, 29 Fed. Cl. at 728.

4.    Remand Is Appropriate on the Fitness Determination.

Here, relevant evidence is not "reflected in the Correction Board's decision." *Mazarji*, 164 Fed. Cl. at 313. "[T]he Board did not discuss relevant evidence that may contradict [its] conclusions" regarding the core issue: "the severity or effect of his [flat feet or plantar fasciitis] on his ability to perform [his] duties." *Henrikson*, 162 Fed. Cl. at 608. Because "evidence may not have been, or was not, considered below by the [B]oard, the proper course . . . is to remand . . . for additional . . . explanation." *Frey*, 112 Fed. Cl. at 348 (internal quotations omitted).

**B.    Plaintiff Does Not Establish a Systematic Failure To Apply the VA Ratings, but the Board Should Re-Examine the Army's Practice on Remand.**

In addition to erring in the fitness determination, Plaintiff argues the Army systematically violates the IDES. First, he argues that because the VA rated his flat feet and plantar fasciitis at fifty percent, it means the Army did not "apply the VASRD [and] the VA's supplied ratings." Pl.'s Mot. at 6. Second, he contends that after the Army found his bunions unfitting, it "failed to apply the VASRD" and the VA rating for that condition. Pl.'s Mot. at 9.

Plaintiff's first argument fails. The mandated application of the VA ratings is compelled only once a PEB determines a member is unfit. *Thomassee*, 158 Fed. Cl. at 235. *See also McCord v. United States*, 131 Fed. Cl. 333, 341–42 (2017). The VA exam and rating are relevant evidence, but they are "not determinative" of fitness. *Ward*, 133 Fed. Cl. at 431. While the Army's fitness determination did not sufficiently consider the VA exam—an error which among others warrants remand—this does not establish a systemic violation of the separate requirement to *apply* the VA's ratings.

Plaintiff's second challenge is stronger. He asserts that the Army was required to "apply the VA determined ratings" once it found his bunions unfitting. Compl. at 21. The problem is that here, the VA provided two ratings that included his bunions: an official, overall rating of fifty percent for all his foot conditions combined under VASRD code 5276; and an informal

rating of ten percent per foot for bunions alone, for twenty percent in total.  AR 166.  After finding Plaintiff's bunions unfitting, the PEB adopted only the sub-rating.  AR 161.  It explained that although it was applying the 5276 "flatfoot" code, it would follow the VA's informal note instead.  AR 161.  The Board adopted this explanation.  AR 17–18.

The Court recently confronted a similar issue in *Culpepper v. United States*.  There, the VA rated a Navy member's brain conditions under two separate VASRD codes and awarded a fifty percent rating for the conditions in combination.  *Culpepper I* at *1.  But the VA noted that "for [Department of Defense] purposes" the second of those conditions "would only warrant a [ten] percent evaluation[.]"  *Id.* (alteration in original).  As in this case, a PEB found only the second condition unfitting and applied the ten percent VASRD rating.  *Id.*  The Court found "substantial and legitimate" reasons to remand.  *Id.*  On remand, the Board for Correction of Naval Records ("BCNR") concluded the Navy erred by "seeking out a separate rating" and "had no statutory or regulatory authority to modify the rating provided by the VA in Integrated DES cases except under limited circumstances not applicable in this case."  Decision on Remand of BCNR, *Culpepper v. United States*, No. 22-420 (Fed. Cl. May 19, 2023) (Dietz, J.) at 8, Dkt. No. 20.  The Court later found the Government's original position lacked substantial justification.  *See* Opinion and Order Granting Motion for Attorney Fees, No. 22-420 (Fed. Cl. Nov. 21, 2024) (Dietz, J.), Dkt. No. 46 at 7–8 (hereinafter "*Culpepper II*")

The Government argues this case can be distinguished from *Culpepper* because the formal PEB "inexplicably assigned a 10 percent rating" where the informal PEB had accepted a fifty percent rating.  Def.'s Suppl. Br. at 3.  The Court disagrees.  The error acknowledged by the BCNR in *Culpepper* appears to be the same as alleged here: reliance on a "comment . . . which did not constitute the VA's recommendation."  *Culpepper II* at 7.  And as importantly, the BCNR in *Culpepper* highlighted that "[s]ince it was *clear* that [Mr. Culpepper's] conditions were not separable, the FPEB committed a *clear error*."  *Id.* (emphasis and alterations in original).  The Government protests that in *Culpepper* the informal PEB had determined Plaintiff's conditions were not separable; here the Army did not.  Def.'s Suppl. Br. at 3.  But here, the Army erred in evaluating the overlap of symptoms and separability of his conditions, so the Government's comparison is inapposite.

The Army's decision to deviate from the VA's combined rating for Plaintiff's overlapping foot conditions also appears to cut against Section 4.14 of the VASRD which instructs agencies to avoid "pyramiding," or "the evaluation of the same disability under various diagnoses."  38 C.F.R. § 4.14.  *See also Casiano v. United States*, 141 Fed. Cl. 528, 546 (2019), *aff'd*, 825 F. App'x 894 (Fed. Cir. 2020) (interpreting 38 C.F.R. § 4.14)).  Section 4.14 also warns that for extremities (including for feet and hands), "disability from injuries to the . . . joints of an extremity may overlap to a great extent."  *Id.*  The caselaw the parties identified does not directly address this sub-rating issue.  *See* Def.'s Suppl. Brief at 1–3; Pl.'s Suppl. Br. at 1–4.

The Court's remand to re-evaluate Plaintiff's fitness determination may alter what conditions are unfitting—and thus, what rating to apply.  Given this, the Court does not find the Army's actions constitute a clear violation of law or regulation at this time.  But on remand if the Board again applies a form of sub-rating based on the VA's comment, it should fully explain and justify the legality of the VA's informal rating and the Army's reliance on it.  An unexplained gulf or deviation is unacceptable.  *Keltner*, 165 Fed. Cl. at 506.

### C.    Plaintiff Does Not Establish a Full and Fair Hearing Violation.

Plaintiff asserts that the alleged legal errors in his case violated 10 U.S.C. § 1214, which guarantees that service members separated for disability receive a "full and fair hearing." Compl. at 19, 21, 23. *See also* 10 U.S.C. § 1214. "The rights associated with a 'full and fair hearing'" include the right to counsel and the right to testify. *Grooms v. United States*, 113 Fed. Cl. 651, 667 (2013). Challenges under this statute address whether procedures "afford . . . ample opportunity to be heard and include several layers of impartial review." *Casiano*, 141 Fed. Cl. at 543. Accordingly, formal PEB procedures which provide "the opportunity to appear in person . . ., to be represented by an appointed military counsel or counsel of their choice, and to present evidence and call witnesses . . . satisfies the statutory requirement under 10 U.S.C. § 1214." *Frey*, 112 Fed. Cl. at 344.

Plaintiff asserts he did not receive a full and fair hearing because his PEB failed "to make its own determinations . . . consider the collective impact of his disabilities on his fitness . . . to apply the VASRD . . . or apply the VA supplied ratings." Compl. at 19. Mr. McCadney does not claim he was denied a hearing, or that he was unrepresented by counsel, or that his hearings were not impartial. Plaintiff received multiple rounds of consideration by the MEB (including an appeal and a remand from the PEB) and a formal PEB hearing where he was represented by counsel. AR 161. Thus, he has not established a full and fair hearing violation.

### D.    Plaintiff's Mental Health Claims Are Waived.

Plaintiff's Complaint and subsequent briefing raise vague claims related to the seventy percent disability rating he received for his PTSD and TBI—including arguing for the first time in his reply brief that his PTSD should have been unfitting. *See, e.g.*, Compl. at 19 (alleging PEB's review of conditions it considered collectively had "no mention of his mental health condition"); Pl.'s Reply at 6 ("Mr. McCadney raised the issue of his unfitness for PTSD."). Defendant argues any issues related to his mental health are waived because, as it correctly observes, Plaintiff "did not raise any issue related to PTSD or TBI in his MEB appeal, his PEB appeal, or his ABCMR petition." Def.'s Mot. at 22; AR 162 (summarizing MEB and PEB proceedings), 26–37 (ABCMR petition).

"Generally, arguments not raised before the ABCMR are waived." *Pillette v. United States*, 675 F. App'x 1006, 1009 (Fed. Cir. 2017) (citing *Metz v. United States*, 466 F.3d 991, 999 (Fed. Cir. 2006)). Thus, because Plaintiff did not raise issues related to his mental health before the Board, he has waived these arguments before this Court. *See, e.g.*, *id.* at 1011; Pl.'s Reply at 7.

### E.    Plaintiff's Class Allegations

In its Motion for Judgment on the Administrative Record, the Government construed Plaintiff's Complaint as a motion for class certification, which it opposed because Mr. McCadney "has not alleged sufficient facts." Def.'s Mot. at 25. In response, Plaintiff clarified that he did not intend to move for class certification. Pl.'s Mot. at 17–18. Accordingly, the Court declines to address class issues.

## V.    Conclusion

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's motion. It is **GRANTED** with respect to his challenge that the ABCMR's fitness determination is unsupported by substantial evidence, failed to consider the VA exams as relevant evidence, and did not consider the collective impact of Plaintiff's foot conditions. This was arbitrary and capricious. Plaintiff's motion is **DENIED** with respect to his other challenges.

The Government's Motion for Judgment on the Administrative Record is **GRANTED IN PART and DENIED IN PART**. It is **GRANTED** with respect to the Government's arguments that Plaintiff does not establish systemic violations of the IDES process, that Plaintiff was not denied a full and fair hearing, and that his mental health claims are waived here. It is **DENIED** in all other respects.

The case **SHALL BE REMANDED** to the ABCMR with instructions to re-examine whether Plaintiff's flat feet and plantar fasciitis are unfitting consistent with this Opinion and to apply the proper percentage rating from the VA in compliance with the IDES regulations and statute.

Plaintiff may submit additional arguments and evidence on remand. The ABCMR is directed to take any corrective action deemed appropriate based on its review and to advise the Court of the same. The Board must complete its remand within **120 days**.

The Clerk is directed to serve a copy of this Opinion and Order upon the Board at the following address:

Mr. Mark F. Averill                                  Joseph Lister, Director
Acting Secretary of the Army                 Army Board for the Correction of Military Records
Office of the Secretary of the Army         Army Review Board Agency
101 Army Pentagon                                251 18th Street South – Suite 385
Washington, DC 20310-0101                  Arlington, VA 22202-3531

The case is **STAYED** during the duration of the remand. The parties are instructed to submit a joint status report updating the Court of the status of the remand every **sixty days**.


**IT IS SO ORDERED.**

s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge